UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

ANTHONEY CANADA                                                                            PLAINTIFF

v.                                                           CIVIL ACTION NO. 4:14-CV-P77-M

KAREN DAVIS et al.                                                                       DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, Anthoney Canada, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed.

**I. SUMMARY OF CLAIMS**

Plaintiff, who is incarcerated at the Daviess County Detention Center (DCDC), names as Defendants in the caption of his complaint Mrs. Karen Davis, DCDC Class D coordinator; "Majere" Elshire; and the DCDC. In the body of the complaint he also names as a Defendant DCDC employee Mr. Billings. Plaintiff alleges that on his arrival at the DCDC on February 9, 2014, he requested placement in a "workaide position so that I could better serve DCDC and myself. It was my intent to continue my personal growth and expadite my departure from DOC custody. I only met resistance. I sat and watched as people who came in after me were sent to the workaide dorm . . . ." He states that his direct inquiry to Defendant Davis regarding the workaide situation resulted in a "hostile face to face confrontation." Plaintiff alleges that Defendant Davis was "verbally abusive and abusive in her phisical manerisms." He states that the several letters he wrote to her to try to resolve the situation were ignored. He further states that he filed a grievance, which also was ignored.

Plaintiff further alleges that when he was finally placed in a workaide position he was

harassed by Defendant Elshire resulting in his termination two weeks later for looking at a photo of another inmate's family.  Plaintiff states that two days later Defendant Elshire singled him out of a group of people and placed him in segregation for four days.  After that Plaintiff was put into the general population until July 14, 2014, when he was reassigned to the workaide dorm.  He states that on July 17, 2014, Defendant Billings approached him about a letter Plaintiff had sent to Jailer David Osborne a few days before.  Defendant Billings "explained that he would speak to Director Osborne on my behalf concerning the conduct of both Mrs. Davis and Majere Elshire."  Plaintiff states that the next day, Defendant Elshire was openly hostile and intimidating to him "as he ranted about my statement against him."  Defendant Elshire ordered Plaintiff to pack up and sent him back to general population "indicating that I couldn't work for him and that I was to be transfered."  Plaintiff alleges, "I have spent these months in fear for my safety.  I have been harassed, intimidated, and verbally abused."  As relief, he asks for monetary damages and injunctive relief in the form of a reduction of his present sentence.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1) and (2).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  When determining whether a

plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In order to state a claim under § 1983, a plaintiff must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42 (1988). As discussed below, none of Plaintiff's allegations rise to the level of a constitutional violation.

*Claim related to having a workaide position*

A prisoner does not have a constitutional right to prison employment. *Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (holding prisoners have no constitutional right to rehabilitation, education, or jobs). Nor is the failure of custodians to obtain a job for a prisoner or retain him in a prison job actionable. *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)). Because "no prisoner has a constitutional right to a particular job or to any job," *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam), Plaintiff's claim related to not being able to work as a workaide fails to state a claim.

3

*Claim related to grievance being ignored*

An inmate grievance procedure within the prison system is not constitutionally required. *See United States ex rel. Wolfish v. Levi*, 439 F. Supp. 114, 163 (S.D.N.Y. 1977), *aff'd sub nom*, *Wolfish v. Levi*, 573 F.2d 118 (2nd Cir. 1978), *rev'd on other grounds*, *Bell v. Wolfish*, 441 U.S. 520 (1979); *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986); *O'Bryan v. Cnty. of Saginaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977). If the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Spencer*, 638 F. Supp. at 316. Since Plaintiff has no right to an effective grievance procedure, *Ishaaq v. Compton*, 900 F. Supp. 935, 940-41 (W.D. Tenn. 1995); *Flowers v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991), a failure to follow the grievance procedures does not give rise to a § 1983 claim. *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Thus, Plaintiff's claim relating to his grievance being ignored must be dismissed.

*Claim related to verbal harassment*

Although the Eighth Amendment to the U.S. Constitution protects prisoners from cruel and unusual punishment, the claims made by Plaintiff about Defendants' verbal harassment do not rise to the level of an Eighth Amendment violation. The Sixth Circuit has held that harassing or degrading language by a prison official, although unprofessional and despicable, does not amount to a constitutional tort. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d at 954-55; *see also Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats,

4

abusive language, racial slurs, or verbal harassment by prison officials."). Thus, this claim must be dismissed for failure to state a claim.

*Claim related to being placed in segregation*

"'Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)). Moreover, Plaintiff's confinement in segregation for four days did not deprive him of any interest protected by the constitutional guarantee of due process. To determine whether segregation of an inmate "involves the deprivation of a state-created liberty interest protected by the due process clause, courts are to determine if the segregation imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citing *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). "[U]nder *Sandin* a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence." *Id.*

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, temporary segregation for four days, as is the case here, does not impose an atypical and significant hardship. Because he was not deprived of a protected liberty interest, Plaintiff does not state a due-process claim. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (holding that because a 61-day stay in administrative segregation was not atypical and significant prisoner failed to state a cognizable due-process claim).

*Request for reduction of his sentence*

To the extent that Plaintiff seeks release from confinement, such relief is not available in a § 1983 action. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court will by separate Order dismiss Plaintiff's claims.

Date: October 20, 2014

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
     Daviess County Attorney
4414.009